```
                UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF KENTUCKY
                NORTHERN DIVISION at ASHLAND
```

JAMES LOVELL COLE,                )
                                  )
    Plaintiff,                    )
                                  )         Civil Case No.
v.                                )         0:13-cv-101-JMH
                                  )
CAROLYN W. COLVIN, ACTING         )         **MEMORANDUM OPINION**
COMMISSIONER OF SOCIAL            )            **AND ORDER**
SECURITY,                         )
                                  )
    Defendant.                    )

*** 

This matter is before the Court upon cross-motions for Summary Judgment [D.E. 11, 12] on Plaintiff's appeal of the Commissioner's denial of his applications for disability insurance benefits and supplemental security income.[1] [Tr. 12-21]. The Court, having reviewed the record and being otherwise sufficiently advised, will deny Plaintiff's motion and grant Defendant's motion.

**I. Overview of the Process and the Instant Matter**

The Administrative Law Judge ("ALJ"), in determining disability, conducts a five-step analysis:

    1. An individual who is working and engaging in substantial gainful activity is not disabled, regardless of the claimant's medical condition.

---

[1] These are not traditional Rule 56 motions for summary judgment. Rather, it is a procedural device by which the parties bring the administrative record before the Court.

2. An individual who is working but does not have a "severe" impairment which significantly limits his physical or mental ability to do basic work activities is not disabled.

3. If an individual is not working and has a severe impairment which "meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s)", then he is disabled regardless of other factors.

4. If a decision cannot be reached based on current work activity and medical facts alone, and the claimant has a severe impairment, then the Secretary reviews the claimant's residual functional capacity and the physical and mental demands of the claimant's previous work. If the claimant is able to continue to do this previous work, then he is not disabled.

5. If the claimant cannot do any work he did in the past because of a severe impairment, then the Secretary considers his residual functional capacity, age, education, and past work experience to see if he can do other work. If he cannot, the claimant is disabled.

*Preslar v. Sec'y of Health & Hum. Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994) (citing 20 C.F.R. § 404.1520 (1982)). "The burden of proof is on the claimant throughout the first four steps of this process to prove that he is disabled." *Id.* "If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Secretary." *Id.*

In the instant matter, the ALJ determined that Plaintiff did not engage in substantial gainful activity during the relevant time period under step one. [Tr. 14]. Under step two, the ALJ found that Plaintiff's medically determinable

2

impairments of degenerative disc disease of the lumbar spine, affective disorder, and borderline intellectual functioning were "severe" as defined by the agency's regulations. [Tr. 14]; 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ further found that Plaintiff's knee pain was a "non-severe" impairment. [Tr. 15].

During step three of the analysis, the ALJ considered all of Plaintiff's impairments and decided that none of them met the criteria listed in 20 C.F.R. pt. 404 subpt. P app. 1. [Tr. 15-16]. After further review of the record, the ALJ concluded at step four that Plaintiff had a residual functional capacity ("RFC") to perform light work, but was limited to lifting and/or carrying 20 pounds occasionally, 10 pounds frequently; standing/walking or sitting six hours out of an eight hour workday; and unlimited pushing/pulling ability. [Tr. 16-19]. Plaintiff was additionally limited in that he could occasionally climb ramps/stairs, balance, stoop, crouch, kneel, or crawl but never climb ladders, ropes, or scaffolds. [Tr. 17-19]. Plaintiff could never perform overhead reaching bilaterally, but could perform frequent reaching, front or lateral, bilaterally. [Tr. 17-19]. Any work performed by Plaintiff would have to consist of simple, routine tasks, with short, simple directions with only simple work-related decisions with few workplace changes. [Tr. 17-19]. Finally, Plaintiff could occasionally work with the general public, co-workers, and supervisors. [Tr. 17-19].

The ALJ found that Plaintiff was unable to perform any of his past relevant work. [Tr. 19]. However, there were jobs in the national economy that Plaintiff could perform. [Tr. 20-21]. Thus, the ALJ determined that Plaintiff is not disabled under the Social Security Act. [Tr. 21].

Plaintiff appeals the decision of the ALJ arguing that the ALJ erred by classifying his knee pain as non-severe, that the ALJ erred by not finding that his stenosis of the lumbar spine did not meet a listed impairment, and that the ALJ erred by finding that Plaintiff had past relevant skilled work.

## II. Standard of Review

In reviewing the ALJ's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, judicial review of the ALJ's decision is limited to an inquiry into whether the ALJ's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the ALJ employed the proper legal standards in reaching her conclusion. *See Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Cutlip*, 25 F.3d at 286 (citations omitted).

**III. Factual and Procedural Background**

Plaintiff was 39 years of age on the alleged disability onset date [Tr. 20] and has an eighth grade education. [Tr. 37]. While attending school, Plaintiff was enrolled in mostly special education classes. [Tr. 37]. Plaintiff has past work experience as a pipeline laborer, cable line laborer, and self-employed construction laborer. [Tr. 19]. Plaintiff filed applications for disability insurance benefits and supplemental security income ("SSI"), alleging disability beginning on April 1, 2008. [Tr. 12]. The claims were denied initially and upon reconsideration. [Tr. 12]. Plaintiff requested a hearing with an ALJ, which took place on February 1, 2012. [Tr. 12]. The ALJ issued an unfavorable decision denying disability insurance benefits and SSI on March 2, 2012. [Tr. 21].

According to Plaintiff, he has had knee pain for eight to ten years [Tr. 41], which is now constant, [Tr. 42], and he treats with Percocet. [Tr. 45]. Plaintiff also has constant pain in his neck and back. [Tr. 42].

On October 27, 2005, Plaintiff was treated at Integrity Orthopaedics for left knee pain, and the impression was a meniscal tear. [Tr. 236]. Plaintiff treated with Family Medicine in Morehead. [Tr. 400]. On February 7, 2012, Plaintiff presented

5

with back pain. [Tr. 402]. At that time, Plaintiff was diagnosed with degenerative disc disease of the cervical and lumbar spine, anxiety, and insomnia. [Tr. 403].

Plaintiff regularly treated at St. Claire Regional Medical Center. [Tr. 243-337]. Plaintiff underwent arthroscopic surgery for a meniscal tear on March 20, 2003. *See* [Tr. 254-55]. On February 4, 2004, Plaintiff visited the emergency room for back pain. [Tr. 264]. On July 12, 2004, it was noted that Plaintiff had severe changes of degenerative disc disease at the C5/C6 level with near complete loss of disc height. [Tr. 270].

Plaintiff also visited the emergency department at Kings Daughters Medical Center. [Tr. 347-62]. On August 13, 2010, a CT scan of Plaintiff's cervical spine was performed. [Tr. 350]. The results of the CT scan indicated multiple developmental anomalies including fusion at C2, C3, C6, and C7 and mild compression deformity at the C5 level. [Tr. 350]. There was also mild grade-1 retrolisthesis of the C4 and C5 with bilateral moderate neural foraminal narrowing. [Tr. 350]. An X-Ray of the lumbar spine showed no acute or significant abnormality. [Tr. 352].

An MRI was taken of Plaintiff's lumbar region on July 23, 2008. [Tr. 239]. The results showed a posterior bulge of the intervertebral disc and bilateral facet hypertrophy with mild bilateral neural foraminal encroachment, right greater than the

6

left at L5-S1. [Tr. 239]. Desiccation of the intervertebral disc with posterior bulging disc and bilateral facet hypertrophy with consequent moderate left neural foraminal narrowing and moderate to severe right neural foraminal narrowing at L4-L5 was also exhibited. [Tr. 239]. A posterior bulge of intervertebral disc with posterior disc osteophyte complex projecting posteriorly and bilateral facet hypertrophy, as well as consequent moderate bilateral neural foraminal narrowing on a multifactorial chronic basis was found at L3-L4. [Tr. 239].

An additional MRI of the lumbar region was taken on August 25, 2011. [Tr. 381]. The test revealed a diffuse disc bulge with facet arthropathy and thickening of the ligamentum flavum that causes moderate central canal stenosis at L1-2 and L2-3. [Tr. 381]. There was a diffuse disc bulge with facet arthropathy causing significant central canal and bilateral foraminal stenosis at L3-4. [Tr. 381]. At L4-5 there was a diffuse disc bulge, bilateral facet arhtropathy, thickening of the ligamentum flavum, which causes right foraminal stenosis and mid left foraminal encroachment. [Tr. 381]. At L5-S1, there was diffuse disc bulge with face arthropathy, which causes bilateral foraminal stenosis and mild central canal encroachment. [Tr. 381].

Dr. Amy Conley prepared a functional capacity assessment for Plaintiff. [Tr. 407-11]. Dr. Conley diagnosed Plaintiff with

7

degenerative disc disease of the lumbar spine, degenerative disc disease of the cervical spine, and anxiety. [Tr. 408]. Dr. Conley opined that Plaintiff could lift or carry 10 pounds occasionally, less than 10 pounds frequently, could stand and walk less than two hours in an eight hour workday, and sit less than two hours in an eight hour workday. [Tr. 409]. Dr. Conley also opined that Plaintiff had postural, physical, and environmental limitations. [Tr. 410].

Dr. Anbu Nadar completed a medical report of Plaintiff on January 5, 2012. [Tr. 383-90]. Dr. Nadar indicated that Plaintiff had been diagnosed with chronic cervical and lumbosacral strain, which causes severe limitations, degenerative disc disease, which causes severe limitations, torn meniscus in the right knee, which causes moderate limitations, and anxiety and depression, which causes moderate limitations. [Tr. 384]. Dr. Nadar further opined that Plaintiff could carry 20 pounds on an occasional basis, 10 pounds on a frequent basis, was limited to standing/walking and sitting for less than two hours in an eight hour work day, and had postural, physical, and environmental limitations. [Tr. 385-86]. These findings led to Dr. Nadar opining that Plaintiff was totally disabled. [Tr. 390].

On August 9, 2010, Plaintiff underwent a psychological evaluation as part of a consultative examination. Dr.

Christopher Catt stated two different full-scale IQ scores for Plaintiff, 59 and 69. [Tr. 342-43]. It is unclear which score is correct, but, in any event, Dr. Catt states that the score "likely underestimates the claimant's overall intellectual functioning." [Tr. 343]. Dr. Catt assessed Plaintiff with multiple limitations. Dr. Catt found that Plaintiff's "capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks is affected by the impairment with slight limitations." [Tr. 344]. According to Dr. Catt, Plaintiff's "ability to tolerate stress and pressure of day-to-day employment is affected by the appearance with slight limitations." [Tr. 344]. Furthermore, Plaintiff's "ability to sustain attention and concentration towards the performance of simple, repetitive tasks is affected by the impairment with slight limitations." [Tr. 344]. Finally, Plaintiff's "capacity to respond appropriately to supervision, coworkers, and work pressures in a work setting is affected by the impairment with slight limitations." [Tr. 344].

On August 24, 2010, an internal medicine examination was performed by Dr. Naushad Haziq. [Tr. 364-71]. An examination of the lumbar spine revealed normal curvature and pain from T8 through S1, with mild to moderate limitations in movement. [Tr. 368]. Plaintiff exhibited a slow, caution, and antalgic gain, as

9

well as difficulty walking on the heels and toes, performing tandem gait, and squatting. [Tr. 368].

Vocational expert Mr. Anthony Michael testified at the hearing before the ALJ. [Tr. 53-58]. Mr. Michael testified that a person with an RFC equivalent to the ALJ's finding for Plaintiff would not be able to return to Plaintiff's past relevant work. [Tr. 55-56]. However, Mr. Michael found that there would be jobs in the national economy that someone with Plaintiff's RFC could perform. [Tr. 56]. Mr. Michael found that a hypothetical person could perform no jobs in the national economy if they had the same psychological limitations as the ALJ's RFC finding for Plaintiff, but with the additional physical limitations of occasional lifting of 20 pounds, frequently lift 10 pounds, could stand and walk less than two hours in an eight hour work day, could sit for less than two hours in an eight hour work day, occasionally able to crouch, kneel, never able to crawl, pushing and pulling was limited, lifting and carrying was limited, must avoid concentrated and unprotected heights, must avoid moving machinery, must avoid extreme humidity, and must avoid exposure to vibration. [Tr. 57].

On a bad day, Plaintiff claims that he lays around and watches television. [Tr. 47]. On a good day, Plaintiff gets out and walks around. [Tr. 47]. Plaintiff is able to walk two to

three hundred feet. [Tr. 47]. Additionally, Plaintiff can wash dishes and clean the house. [Tr. 48]. Plaintiff also likes to visit with his daughter and talk to his family. [Tr. 48].

**IV. Analysis**

Plaintiff argues that the ALJ erred by finding that his knee pain was non-severe because there is sufficient medical evidence to show that the knee pain was a continuing problem, that the ALJ erred by not finding Plaintiff meets Listing 1.04(C) because he has been diagnosed with lumbar spinal stenosis on numerous occasions, and that the ALJ erred by not accepting as valid the full-scale IQ score as assessed by examining physician, Dr. Christopher Catt.

Defendant responds by arguing that Plaintiff failed to prove he had a serious knee impairment, and, even if he did, the ALJ's decision to classify the knee pain as a severe impairment was harmless error because the ALJ found other impairments to be severe. Defendant further argues that substantial evidence supports the ALJ's decision that Plaintiff's impairments did not meet Listing 1.04(C) and that the ALJ properly discounted the full-scale IQ score as assessed by Dr. Catt. Each issue will be discussed in turn.

**I. It is unnecessary for the Court to determine whether the ALJ erred by finding Plaintiff's knee pain to be a non-severe impairment.**

Plaintiff argues that it was error for the ALJ to find that Plaintiff's knee pain was a non-severe impairment because the ALJ based his finding on Plaintiff's lack of medical treatment, but the medical records show that Plaintiff had received continuous medical treatment for his knee pain. The ALJ found that Plaintiff's knee pain was a non-severe impairment because Plaintiff worked and earned $56,000 in 2007, which was four years after his last treatment for knee problems.

> According to the regulations, upon determining that a claimant has one severe impairment, the Secretary must continue with the remaining steps in his disability evaluation. . . . Since the Secretary properly could consider claimant's [alleged severe impairment] in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity, the Secretary's failure to find that claimant's [alleged severe impairment] constituted a severe impairment could not constitute reversible error.

*Maziarz v. Sec. of Health & Hum. Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). While the ALJ did not find Plaintiff's alleged impairment of knee pain to be severe, the ALJ explicitly discussed and considered Plaintiff's knee pain in determining Plaintiff's RFC. [Tr. 17-18]. Therefore, even if the ALJ erred, the error would be harmless, and, thus, it is unnecessary for the Court to determine if the ALJ erred in assessing Plaintiff's knee pain as non-severe. *See Fisk v. Astrue*, 253 F. App'x 580,

584 (6th Cir. 2007) ("Because the ALJ considered these impairments when determining Fisk's residual functional capacity, '[w]e find it unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." (alteration in original) (quoting *Maziarz*, 837 F.2d at 244)); *see also Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) ("This caused the ALJ to consider Anthony's severe and nonsevere impairments in the remaining steps of the sequential analysis. The fact that some of Anthony's impairments were not deemed to be severe at step two is therefore legally irrelevant." (citing *Maziarz*, 837 F.2d at 244)).

**II. The ALJ's decision that Plaintiff's spinal stenosis does not equal or meet a listed impairment is supported by substantial evidence.**

Plaintiff argues that the subjective and objective evidence regarding his spinal stenosis meets Listing 1.04(C) and the ALJ erred by finding that Listing 1.04(C) was not met. "To meet the requirements of a listing, [a claimant] must have a medically determinable impairment(s) that satisfies *all* of the criteria in the listing." 20 C.F.R. § 404.1525(d) (emphasis added). An ALJ's determination of whether a claimant meets the requirements of a listed impairment must be supported by substantial evidence. *See Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011) ("Such an analysis and conclusion regarding [whether

claimant's] mental impairment [meets a listed impairment] meets the substantial evidence standard.").

To meet Listing 1.04(C), Plaintiff must show that he has a disorder of the spine "resulting in compromise of a nerve root or the spinal cord with lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b." 20 C.F.R. pt. 404 subpt. P app. 1 § 1.04(C). Inability to ambulate effectively is defined as "an extreme limitation of the ability to walk." 20 C.F.R. pt. 404 subpt. P app. 1 § 1.00(B)(2)(b)(1). The ALJ found that the medical evidence did not support a finding that Listing 1.04(C) was met by stating that "the examining and treating physicians' reports show no evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication, as required by Section 1.04." [Tr. 15].

The ALJ's finding that Plaintiff did not meet Listing 1.04(C) is supported by substantial evidence. The Court has reviewed the medical evidence of record and the Court has found no diagnosis of nerve root compression or pseudoclaudication. Furthermore, Plaintiff has not cited any medical record in filings before this Court indicating a diagnosis of nerve root compression or pseudoclaudication. Lumbar spinal stenosis was

14

diagnosed on Plaintiff's MRI reports, but there is no finding that the spinal stenosis results in pseudoclaudication or compromise of the nerve root or spinal cord. *See* [239-40, 381-82]. Plaintiff claims that subjective complaints, as well as objective evidence, establishes that he meets Listing 1.04(C). However, Plaintiff testified that on good days he likes to walk and can walk two to three hundred yards. [Tr. 47]. Therefore, Plaintiff himself claims he can ambulate effectively, and Plaintiff cannot meet all the requirements of Listing 1.04(C). *See* 20 C.F.R. pt. 404 subpt. P app. 1 § 1.00(B)(2)(b). Thus, the decision that Plaintiff did not meet Listing 1.04(C) is supported by substantial evidence.

> **III. The ALJ did not find that Plaintiff engaged in skilled work, and, therefore, the ALJ did not err in not relying on the IQ score provided by Dr. Christopher Catt.**

Plaintiff argues that the ALJ did not rely on the IQ scores provided by the consultative examiners because Plaintiff's skilled work showed that he had a higher level of functioning than indicated by the IQ score. Plaintiff's characterization of the ALJ's opinion is inaccurate and the ALJ's decision is supported by substantial evidence.

The ALJ stated that the consultative examiner, in different parts of his report, noted Plaintiff's IQ score as both 59 and 69. [Tr. 16]. However, the ALJ considered the full-scale IQ

score to be invalid because the examiners noted within their report that the score was likely to be an underestimate of Plaintiff's overall intellectual functioning. [Tr. 16]; *see also* [Tr. 343] ("Full-Scale IQ likely underestimates the claimant's overall intellectual functioning."). The ALJ believed this suggested that Plaintiff "did not put forth good effort during testing." [Tr. 16].

It was not error for the ALJ to rely on the statements by the doctor about the results of the test. The regulations specifically provide that "the narrative report that accompanies the [intelligence] test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitation." 20 C.F.R. pt. 404 subpt P. app. 1 § 12.00(D)(6)(a). Because the regulations explicitly provide that a narrative report should be included, it was not error for the ALJ to rely upon the narrative report accompanying Plaintiff's IQ score to discredit the validity of that score.

The ALJ did go on to state that Plaintiff "has performed semi-skilled-to-skilled work, which shows he is capable of a higher level of functioning." [Tr. 16]. The ALJ's statement was not an indication that Plaintiff's past relevant work qualified as skilled work, but merely a statement that Plaintiff's past work was of a level that suggested he is capable of higher

16

functioning than was indicated by his full-scale IQ score. Moreover, when discussing Plaintiff's ability to perform past relevant work, the ALJ noted that Plaintiff's past relevant work qualified as unskilled and semi-skilled. [Tr. 19]. Plaintiff's past work was further support that Plaintiff likely functions at a higher level than indicated by the full-scale IQ score, and the ALJ did not classify Plaintiff's past relevant work as skilled. Therefore, the ALJ's decision to give little to no reliance on the IQ score as reported by Dr. Catt was supported by substantial evidence.

**V. Conclusion**

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Motion for Summary Judgment [D.E. 11] be, and the same hereby is, **DENIED**;

(2) that the Commissioner's Motion for Summary Judgment [D.E. 12] be, and the same hereby is, **GRANTED**.

This the 20th day of May, 2014.



Signed By:
*Joseph M. Hood*
Senior U.S. District Judge